FILED by __YH__ D.C.

**Mar 25, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 21-60101-CR-SMITH/VALLE

### CASE NO. _____

**18 U.S.C. § 1349**
**18 U.S.C. § 1341**
**18 U.S.C. § 1343**
**18 U.S.C. § 1956(h)**
**18 U.S.C. § 1956(a)(1)(A)(i)**
**18 U.S.C. § 1957(a)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**

**UNITED STATES OF AMERICA**

**vs.**

**GERALD PARKER,**
**MICHAEL ASSENZA,**
    **a/k/a "Michael Grimaldi,"**
**PAUL GERACI,**
**TED ROMEO,**
    **a/k/a "Ted Lamar,"**
**PAUL VANDIVIER,**
    **a/k/a "Doug Wright," and**
**CINDY VANDIVIER,**
    **a/k/a "Madison Brooke,"**
    **a/k/a "Madison Brookes,"**

        **Defendants.**

_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### Definitions

1.      A "security" is defined by federal law as "any . . . stock . . ., or, in general, any interest or instrument commonly known as a "security' . . . ." 15 U.S.C. 77b(a)(1).  Stocks, including "common stocks," are a type of security that gives stockholders a share of ownership in a company.  Stocks also are called "equities."

2.      A "phone room" or "boiler room" is a telephone call center where salespeople use telephones, emails, and other means to contact potential investors in order to sell speculative and fraudulent securities, futures contracts, precious metals, or other investments through high-pressure sales tactics.

3.      A "fronter" is a salesperson at the phone room or boiler room who makes the initial contact with a potential investor to pitch securities, futures contracts, precious metals, and/or other investments, often reading from a script.

4.      A "closer" is a salesperson at the phone room or boiler room who follows up with the potential investor to finish the pitch and convince the potential investor to electronically wire transfer money or mail money for the purchase of securities, futures contracts, precious metals, and/or other investments.

5.      A "kickback" or an "undisclosed commission" is a payment to a phone room or boiler room salesperson for referring an investor to buy securities, futures contracts, precious metals, and/or other investments, based on a percentage of money invested, that is not made known to the investor.  A kickback or undisclosed commission is funded by the investor's payment.

## Market Background

6.      The United States Commodity Futures Trading Commission ("CFTC") federally regulated futures contracts for various commodities, including precious metals such as silver. A "futures contract" was a type of legally binding contract to buy or sell a product or financial instrument at an agreed-upon price and on an agreed-upon date in the future.

7.      The United States Securities and Exchange Commission ("SEC") federally regulated the securities market.

8.      The Financial Industry Regulatory Authority ("FINRA") was a private company that worked under the supervision of the SEC and was authorized by Congress to regulate financial firms that sold securities, among other things.

9.      Most states also regulated the sale of securities in or from the state through state enforcement agencies, including: (a) the Florida Office of Financial Regulation; (b) the Commonwealth of Massachusetts Securities Division; (c) the State of North Dakota Securities Department; and (d) the Colorado Division of Securities.

## The Companies

10.      Social Voucher.com, Inc. ("Social Voucher") was a Florida corporation formed in 2013 to develop a mobile application combining mobile gaming with online shopping. Social Voucher's principal place of business was initially located in Boca Raton, Florida, and subsequently moved to a location in Boynton Beach, Florida. Social Voucher was a privately held company that offered investors the ability to buy common stock in the company.

11.      Mobile App Technologies, Inc. ("Mobile App Technologies") was a Florida corporation formed in 2014. Mobile App Technologies' principal place of business was

located in Boca Raton, Florida. Mobile App Technologies was used to open a bank account and receive Social Voucher investor funds.

12. Stocket Inc. ("Stocket") was a Delaware corporation formed in 2017 to continue the development of the mobile gaming application started by Social Voucher. Stocket was effectively the same business as Social Voucher. Stocket's principal place of business was located in Boynton Beach, Florida. The mobile gaming application business will be referred to as Social Voucher, unless otherwise noted.

13. Internet Marketing Distribution LLC d/b/a Pinnacle Atlantic ("Pinnacle Atlantic") was a Florida company formed in 2011. Pinnacle Atlantic was a boiler room that sold precious metals and shares of Social Voucher stock, among other things. Pinnacle Atlantic's principal place of business was located in Parkland, Florida.

14. Bhagavad Management, Inc. ("Bhagavad Management") was a Florida corporation formed in 2017. Bhagavad Management was a boiler room that sold shares of Social Voucher stock, among other things. Bhagavad Management's principal place of business was located in West Palm Beach, Florida.

15. Investment Bank #1 was an investment bank located in Boca Raton, Florida.

### Conspirators

16. **GERALD PARKER**, a Palm Beach County, Florida resident, was the Chief Executive Officer ("CEO") and shareholder of Social Voucher from at least in or around 2013 through at least in or around 2017. **PARKER** was the de facto owner of Stocket from at least in or around 2017 through at least in or around 2018, although **PARKER**'s name did not appear on corporate paperwork for the company. **PARKER** was the sole owner of Mobile App Technologies from in or around 2014 through at least in or around 2018.

17.      **MICHAEL ASSENZA, a/k/a "Michael Grimaldi,"** a Palm Beach County, Florida resident, was the Director of Technology and shareholder at Social Voucher from at least in or around 2013 through at least in or around 2017.  **ASSENZA** was also the Director of Technology at Stocket from at least in or around 2017 through at least in or around 2018.

18.      **PAUL GERACI**, a Broward County, Florida resident, was the owner and operator of Pinnacle Atlantic from at least in or around 2016 through at least in or around 2018.  **GERACI**, through Pinnacle Atlantic, employed fronters and closers who pitched Social Voucher stock and precious metals.  **GERACI** owned shares of Social Voucher stock.

19.      **TED ROMEO, a/k/a "Ted Lamar,"** a Palm Beach County resident, was a fronter and a closer at Pinnacle Atlantic selling shares of Social Voucher stock and precious metals from at least in or around 2016 through at least in or around 2018.  **ROMEO** owned shares of Social Voucher stock.

20.      **PAUL VANDIVIER, a/k/a "Doug Wright,"** a Palm Beach County, Florida resident, was the co-owner and operator of Bhagavad Management from at least in or around 2017 through at least in or around 2018, and also acted as a closer selling shares of Social Voucher stock.  **PAUL VANDIVIER** owned shares of Social Voucher stock.

21.      **CINDY VANDIVIER, a/k/a "Madison Brooke," a/k/a "Madison Brookes,"** a Broward County, Florida resident, was the co-owner and operator of Bhagavad Management from at least in or around 2017 through at least in or around 2018, and also acted as a closer selling shares of Social Voucher stock.  **CINDY VANDIVIER** owned shares of Social Voucher stock.

22.      Individual #1, a Broward County, Florida resident, raised some of the initial funding for Social Voucher through investors and acted as a co-owner of the company.

Individual #1's name did not appear on any corporate paperwork for the company. Individual #1 owned shares of Social Voucher stock.

<u>COUNT 1</u>
**Conspiracy to Commit Mail Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1.     The General Allegations section of this Indictment is re-alleged and fully incorporated herein by reference.

2.     From in or around June 2013, and continuing through in or around November 2018, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**GERALD PARKER,**
**MICHAEL ASSENZA,**
**a/k/a "Michael Grimaldi,"**
**PAUL GERACI,**
**TED ROMEO,**
**a/k/a "Ted Lamar,"**
**PAUL VANDIVIER,**
**a/k/a "Doug Wright," and**
**CINDY VANDIVIER,**
**a/k/a "Madison Brooke,"**
**a/k/a/ "Madison Brookes,"**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

(a)     to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of

executing such scheme and artifice to defraud, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

(b)    to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by:  (a) soliciting millions of dollars in investor funds under false and fraudulent pretenses, representations, promises, and by making material omissions; (b) misappropriating and converting investor funds for the personal benefit of the defendants, without the knowledge or authorization of the investors; and (c) concealing the commission of the offense.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      Beginning in or around June 2013, **GERALD PARKER** and **MICHAEL ASSENZA** agreed to incorporate Social Voucher in Florida to develop a mobile gaming application which was intended to combine online gaming and online shopping.    Social Voucher was supposed to earn revenue from users of the mobile application buying products while using the application.  **PARKER** controlled the bank accounts where Social Voucher funds were deposited.

5.      Between in or around June 2013 and in or around November 2018, **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, PAUL VANDIVIER, CINDY VANDIVIER**, and others raised approximately $21 million in funds from Social Voucher investors.  At no point did the Social Voucher mobile gaming application generate any revenue or profit.

6.      **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, PAUL VANDIVIER, CINDY VANDIVIER**, and others directed investors to make payments for the Social Voucher investments by: (a) electronically transferring funds via interstate wires to Social Voucher's corporate bank accounts; and (b) mailing checks from residences in and outside the state of Florida to Social Voucher's corporate office located in Florida.

7.      Beginning in or around June 2013, **GERALD PARKER** hired boiler room salespeople, including **PAUL GERACI, TED ROMEO, PAUL VANDIVIER**, and **CINDY VANDIVIER**, to personally solicit investors and hire other sales agents to solicit, offer, and sell shares of Social Voucher stock to investors via telemarketing.   **GERALD PARKER, MICHAEL ASSENZA**, and others at Social Voucher knew that these boiler rooms had

access to potential investors and telephone lists because they pitched other suspect investments, such as precious metals.

8.      **GERALD PARKER** paid **PAUL GERACI** a kickback of fifty (50) percent of the investor funds he raised for Social Voucher through **GERACI**'s boiler room (Pinnacle Atlantic), often via interstate wires. **GERACI** subsequently paid **TED ROMEO** a percentage of the kickbacks and undisclosed commissions from **PARKER**.

9.      **GERALD PARKER** paid **PAUL VANDIVIER** and **CINDY VANDIVIER** a kickback of thirty (30) to thirty-five (35) percent of the investor funds they raised for Social Voucher through their boiler room (Bhagavad Management), often via interstate wires.

10.     At times, **PAUL GERACI**, **TED ROMEO**, **PAUL VANDIVIER**, **CINDY VANDIVIER**, and other boiler room salespeople falsely held themselves out as employees of Social Voucher or Stocket.

11.     **GERALD PARKER**, **MICHAEL ASSENZA**, **PAUL GERACI**, **TED ROMEO**, **PAUL VANDIVIER**, **CINDY VANDIVIER,** and others described **ASSENZA** and **PARKER** as successful businessmen to potential and actual Social Voucher investors without disclosing that: (a) in or around 2011, in a civil action for securities fraud, the United States District Court in the District of Nebraska entered a default judgment against **GERALD PARKER** of approximately $30 million, jointly and severally with his co-defendants, *see Brehm et al. v. Engle et al.*, 8:07-cv-00254-JFB (D. Neb.); (b) in or around 2006, **MICHAEL ASSENZA** pled guilty to conspiracy to commit securities fraud and money laundering in the United States District Court in the Southern District of Florida, was ordered to pay restitution to his victims, *see United States v. Puccio, et al.*, 9:05-cr-80066-DTKH (S.D. Fla.) ("**ASSENZA**'s 2006 Securities Fraud Conviction"), and was permanently barred from acting

as a broker-deal by FINRA as result of the conviction; or (c) in or around 2002, Individual #1, a co-owner of Social Voucher, pled guilty to conspiracy to commit securities fraud in the Eastern District of New York and was ordered to pay restitution to the victims of that scheme.

12.     **TED ROMEO**, sometimes using the name "Ted Lamar," bragged to investors and potential investors in Social Voucher and precious metals about his successes as a businessman, including his success in the precious metals market, without disclosing that, in or around 2007, the United States District Court in the Southern District of Florida entered a consent order against **ROMEO** ordering him to pay civil monetary penalties and restitution to his victims and permanently enjoining him from any business activities related to commodity futures contracts, among other things, to settle a civil action brought by the CFTC alleging that **ROMEO** fraudulently solicited investors through telephone calls to open and maintain commodity futures trading accounts, *see CFTC v. Liberty Financial Trading Corp., Inc., et al.*, 04-cv-61235-JAL (S.D. Fla.).

13.     **PAUL VANDIVIER** and **CINDY VANDIVIER** did not tell investors or potential investors that, in or around 2016, the United States District Court in the Southern District of Florida entered a consent order against **PAUL VANDIVIER** and **CINDY VANDIVIER** ordering them to pay civil monetary penalties and restitution to their victims and permanently enjoining them from further violations of the anti-fraud provisions of the CFTC regulations, among other things, to settle a civil action brought by the CFTC alleging that they fraudulently solicited retail customers and misappropriated customer funds in connection with the sale of precious metals, *see CFTC v. Mintline, Inc., et al.*, No. 14-61125-CIV-WJZ.

14.    At times during the conspiracy, **PAUL VANDIVIER** used the name "Doug Wright" and **CINDY VANDIVIER** used the names "Madison Brooke" or "Madison Brookes" on the telephone, on emails, and on business cards, in order to conceal the CFTC consent order from investors and potential investors in Social Voucher.

15.    **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, PAUL VANDIVIER, CINDY VANDIVIER,** and others represented to investors on the telephone, over email, and via written marketing materials that their investment in Social Voucher would be used as capital to develop a mobile gaming application combining gaming with online shopping, without disclosing:  (a) the large kickbacks and commissions that were being paid out of the Social Voucher investor funds; (b) the large salaries going to **PARKER, ASSENZA,** and others at Social Voucher; and (c) that **PARKER** used investor funds to gamble at the casino.

16.    On some occasions during the conspiracy, **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, PAUL VANDIVIER, CINDY VANDIVIER** and others concealed the payment of the kickbacks and undisclosed commissions from investors by, among other things:   (a) providing written marketing materials falsely claiming the funds would be used to develop the mobile gaming application with no mention of the kickbacks or undisclosed commissions; (b) telling investors orally that their investment would be spent on developing the mobile gaming application; or (c) claiming that boiler room salespeople were not taking commissions.

17.    **GERALD PARKER, PAUL GERACI, TED ROMEO, PAUL VANDIVIER, CINDY VANDIVIER,** and others disguised the kickbacks and undisclosed commissions by describing the payments as consulting fees or loans on checks, by setting up

companies to make the payments appear as marketing fees, and by paying the kickbacks and undisclosed commissions in cash at times.

18.     Between in and around July 2013 and November 2018, **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, PAUL VANDIVIER, CINDY VANDIVIER,** and others repeatedly told investors and potential investors that the Social Voucher mobile gaming application was almost ready to launch and in the last phase of testing, despite the fact that the application never ultimately launched or generated revenue.

19.     Although Social Voucher sold common stock to investors, **GERALD PARKER, MICHAEL ASSENZA,** and others failed to register the security with the SEC or state regulators. **PARKER,** personally and on behalf of Social Voucher, consented with state regulators to cease and desist the unregistered sale of the stock in at least four states, including: (a) the State of North Dakota Securities Department (on or about April 25, 2014); (b) the Colorado Division of Securities (on or about December 9, 2015); (c) the Commonwealth of Massachusetts Securities Division (on or about February 11, 2016); and (d) the Florida Office of Financial Regulation (on or about May 5, 2017).

20.     **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, CINDY VANDIVIER, PAUL VANDIVIER,** and others continued to sell Social Voucher stock to investors without disclosing the cease and desist orders, including in the State of Florida.

21.     In or around 2017, **GERALD PARKER, MICHAEL ASSENZA,** and others incorporated Stocket in Delaware, listed a new CEO to replace **PARKER,** and began to pitch the company as Stocket to new investors to conceal from investors the cease and desist orders against Social Voucher and **PARKER.** Although **PARKER's** name was no longer on the

Stocket corporate paperwork, **PARKER** still controlled the company which was effectively the same company as Social Voucher.

22.   **GERALD PARKER** and others falsely and fraudulently told potential investors and investors that Investment Bank #1 agreed to raise between $10 and $15 million for Social Voucher at $3 per share.  While Social Voucher paid Investment Bank #1 to perform consulting services, there was no agreement with Investment Bank #1 to raise between $10 and $15 million or sell stock at $3 per share.

23.   To induce investors to provide money to **GERALD PARKER, MICHAEL ASSENZA, PAUL GERACI, TED ROMEO, CINDY VANDIVIER, PAUL VANDIVIER**, and their co-conspirators, **PARKER, ASSENZA, GERACI, ROMEO, CINDY VANDIVIER, PAUL VANDIVIER**, and their co-conspirators made and caused others to make materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

### Materially False Statements

(a)   That the boiler room salespeople were employees of Social Voucher or Stocket;

(b)   That no kickbacks or commissions would be charged to investors;

(c)   That **GERALD PARKER, MICHAEL ASSENZA**, and **TED ROMEO** were successful businessmen;

(d)   That "Ted Lamar", "Madison Brookes", "Madison Brooke", and "Doug Wright" were the names of the boiler room fronters and closers;

(e)     That the investor funds would be used to develop the Social Voucher mobile gaming application;

(f)     That the Social Voucher mobile gaming application was about to launch;

(g)     That the Social Voucher mobile gaming application would soon be worth over $1 billion;

(h)     That Stocket was a new company and **GERALD PARKER** did not control it;

(i)     That Investment Bank #1 had agreed to raise between $10 and $15 million for Social Voucher at a price of $3 per share;

**Concealment and Omission of Material Facts**

(j)     That **GERALD PARKER, MICHAEL ASSENZA, TED ROMEO, CINDY VANDIVIER, PAUL VANDIVIER**, Individual #1 and others had prior fraud actions against them;

(k)     That **GERALD PARKER, MICHAEL ASSENZA, TED ROMEO, CINDY VANDIVIER, PAUL VANDIVIER**, Individual #1, and others had unsatisfied criminal or civil judgments against them requiring them to pay victims of their prior fraud schemes;

(l)     That **GERALD PARKER** used Social Voucher investor money to gamble at the casino;

(m)     That the boiler rooms run by **PAUL GERACI, PAUL VANDIVIER, CINDY VANDIVIER**, and others received commissions and kickbacks between thirty (30) and fifty (50) percent of the investment funds;

(n)     That Social Voucher was selling an unregistered security; and

(o)     That several states issued cease-and-desist orders against Social Voucher and

**GERALD PARKER**, barring sales of Social Voucher securities in those

states.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-3**
**Mail Fraud**
**(18 U.S.C. § 1341)**

1.     The General Allegations section of this Indictment is re-alleged and fully

incorporated herein by reference.

2.     From in or around June 2013, and continuing through in or around November

2018, in Palm Beach and Broward Counties, in the Southern District of Florida, and

elsewhere, the defendants,

**GERALD PARKER,**
**PAUL VANDIVIER,**
**a/k/a "Doug Wright," and**
**CINDY VANDIVIER,**
**a/k/a "Madison Brooke,"**
**a/k/a/ "Madison Brookes,"**

did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and

artifice to defraud, and obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises, knowing that the pretenses, representations, and

promises were false and fraudulent when made, and for the purpose of executing such scheme

and artifice, did knowingly cause to be delivered certain mail matter by the United States

Postal Service and by private and commercial interstate carrier, according to the directions

thereon, in violation of Title 18, United States Code, Section 1341.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by:  (a) soliciting millions of dollars in investor funds under false and fraudulent pretenses, representations, promises, and by making material omissions; (b) misappropriating and converting investor funds for the personal benefit of the defendants, without the knowledge or authorization of the investors; and (c) concealing the commission of the offense.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 23 of the Manner and Means Section of Count 1 are re-alleged and fully incorporated herein as a description of the manner and means of the scheme and artifice.

## USE OF THE MAILS

5.      On or about the dates specified as to each count below, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants, for the purpose of executing and in furtherance of the scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, as specified below:

| COUNT | APPROX. DATE | DESCRIPTION OF MAILING |
|-------|--------------|------------------------|
| 2 | August 2, 2017 | Investor J.F. mailed a FedEx package with a check in the amount of $9,750 from Herndon, Virginia, to Social Voucher in the Southern District of Florida |

| COUNT | APPROX. DATE | DESCRIPTION OF MAILING |
|-------|--------------|------------------------|
| 3 | April 25, 2018 | Investor C.R. mailed a UPS package with a check in the amount of $15,000 from Remington, Indiana, to Social Voucher in the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1341 and 2.

### COUNTS 4-10
### Wire Fraud
### (18 U.S.C. § 1343)

1.     The General Allegations section of this Indictment is re-alleged and fully incorporated herein by reference.

2.     From in or around June 2013, and continuing through in or around November 2018, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**GERALD PARKER,**
**PAUL GERACI,**
**TED ROMEO,**
**a/k/a "Ted Lamar,"**
**PAUL VANDIVIER,**
**a/k/a "Doug Wright," and**
**CINDY VANDIVIER,**
**a/k/a "Madison Brooke,"**
**a/k/a "Madison Brookes,"**

did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by:  (a) soliciting millions of dollars in investor funds under false and fraudulent pretenses, representations, promises, and by making material omissions; (b) misappropriating and converting investor funds for the personal benefit of the defendants, without the knowledge or authorization of the investors; and (c) concealing the commission of the offense.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 23 of the Manner and Means Section of Count 1 are re-alleged and fully incorporated herein as a description of the manner and means of the scheme and artifice.

## USE OF THE WIRES

5.      On or about the dates specified as to each count below, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants, for the purpose of executing and in furtherance of the scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted, by wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, as specified below:

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 4 | August 1, 2017 | **PAUL VANDIVIER and CINDY VANDIVIER** | Email sent from the "Madison Brookes" email account, controlled by **CINDY VANDIVIER** and located in the Southern District of Florida, to Investor J.F. in Herndon, Virginia, transmitting a link to marketing materials about the Social Voucher application and informing J.F. that "Doug Wright" would be calling |
| 5 | November 14, 2017 | **GERALD PARKER, PAUL GERACI and TED ROMEO** | Email sent from Social Voucher email account, located in the Southern District of Florida, to Undercover #1, transmitting wire instructions for the purchase of Social Voucher stock |
| 6 | November 15, 2017 | **GERALD PARKER, PAUL GERACI and TED ROMEO** | Electronic wire-transfer of $25,000 from Mobile App Technologies Bank of America account ending in 1302, controlled by **GERALD PARKER** and located in the Southern District of Florida, to **PAUL GERACI**'s Wells Fargo bank account located in Jacksonville, Florida, sent via Federal Reserve Bank of New York |
| 7 | December 1, 2017 | **GERALD PARKER and PAUL GERACI** | Email sent from Stocket email account, controlled by **PAUL GERACI** and located in the Southern District of Florida, to Undercover #2, transmitting marketing materials for Social Voucher |

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 8 | January 30, 2018 | **GERALD PARKER and PAUL GERACI** | Electronic wire-transfer of $25,000 from Social Voucher Bank of America account ending in 3242, controlled by **GERALD PARKER** and located in the Southern District of Florida, to **PAUL GERACI**'s Wells Fargo bank account located in Jacksonville, Florida, sent via Federal Reserve Bank of New York |
| 9 | May 29, 2018 | **GERALD PARKER** | Investor M.M. electronic wire-transfer of $15,000 from TD Bank account in Westerville, Ohio to Mobile App Technologies, Inc. TD Bank account ending in 4885 and located in the Southern District of Florida |
| 10 | June 11, 2018 | **PAUL VANDIVIER and CINDY VANDIVIER** | Email sent from the "Madison Brookes" email account, controlled by **CINDY VANDIVIER** and located in the Southern District of Florida, to Investor C.R. in Remington, Indiana, transmitting instructions on how to mail a check to purchase shares of Social Voucher stock |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 11
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

From in or around June 2013, and continuing through in or around November 2018, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

20

**GERALD PARKER,**
**PAUL GERACI,**
**TED ROMEO,**
**a/k/a "Ted Lamar,"**
**PAUL VANDIVIER,**
**a/k/a "Doug Wright," and**
**CINDY VANDIVIER,**
**a/k/a "Madison Brooke,"**
**a/k/a/ "Madison Brookes,"**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

(a)     to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)     to knowingly engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activities are mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 12-15
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(A)(i))

1.      Paragraphs 1 through 22 of the General Allegations section and paragraphs 4 through 23 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**GERALD PARKER,**
**PAUL GERACI,**
**PAUL VANDIVIER,**
**a/k/a "Doug Wright," and**
**CINDY VANDIVIER,**
**a/k/a "Madison Brooke,"**
**a/k/a/ "Madison Brookes,"**

to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, as set forth below:

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|---|
| 12 | August 9, 2017 | **GERALD PARKER, PAUL VANDIVIER and CINDY VANDIVIER** | Electronic wire transfer of $64,313, from Bank of America account ending in 3242, in the name of Social Voucher and controlled by **GERALD PARKER**, sent to BB&T bank account ending in 8708 in the name of Bhagavad Management |

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|---|
| 13 | December 22, 2017 | **GERALD PARKER** and **PAUL GERACI** | $27,500 check, with check number 1470, from Bank of America account ending in 3242, in the name of Social Voucher and made out to **PAUL GERACI**, signed by **GERALD PARKER** |
| 14 | April 13, 2018 | **GERALD PARKER** and **PAUL GERACI** | $32,400 check, with check number 109, from TD Bank account ending in 4885, in the name of Mobile App Ventures and made out to **PAUL GERACI**, signed by **GERALD PARKER**'s family member |
| 15 | April 16, 2018 | **GERALD PARKER, PAUL VANDIVIER and CINDY VANDIVIER** | Electronic wire transfer of $65,800, from Bank of America account ending in 3242, in the name of Social Voucher and controlled by **GERALD PARKER**, sent to BB&T bank account ending in 8708 in the name of Bhagavad Management |

It is further alleged that the specified unlawful activities are mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNTS 16–19
### Monetary Transactions Using Proceeds of Crime
### (18 U.S.C. § 1957(a))

1.      Paragraphs 1 through 22 of the General Allegations section and paragraphs 4 through 23 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates as to each count set forth below, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**GERALD PARKER,**
**PAUL GERACI,**

PAUL VANDIVIER,
a/k/a "Doug Wright," and
CINDY VANDIVIER,
a/k/a "Madison Brooke,"
a/k/a "Madison Brookes,"

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, as set forth below:

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|---|
| 16 | June 27, 2017 | GERALD PARKER and PAUL GERACI | Electronic wire transfer of $23,000, from Bank of America account ending in 3242, in the name of Social Voucher and controlled by GERALD PARKER, sent to Wells Fargo bank account ending in 0448 in the name of PAUL GERACI |
| 17 | August 29, 2017 | GERALD PARKER, PAUL VANDIVIER and CINDY VANDIVIER | Electronic wire transfer of $20,040, from Bank of America account ending in 3242, in the name of Social Voucher and controlled by GERALD PARKER, sent to BB&T bank account ending in 8708 in the name of Bhagavad Management |

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|---|
| 18 | December 6, 2017 | **GERALD PARKER, PAUL GERACI** | Electronic wire transfer of $21,000, from Bank of America account ending in 1302, in the name of Mobile App Technologies and controlled by **GERALD PARKER**, sent to Wells Fargo bank account ending in 0448 in the name of **PAUL GERACI** |
| 19 | April 16, 2018 | **GERALD PARKER, PAUL VANDIVIER and CINDY VANDIVIER** | Electronic wire transfer of $65,800, from Bank of America account ending in 3242, in the name of Social Voucher and controlled by **GERALD PARKER**, sent to BB&T bank account ending in 8708 in the name of Bhagavad Management |

It is further alleged that the specified unlawful activities are mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C))
### (18 U.S.C. § 982(a)(1))

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **GERALD PARKER, MICHAEL ASSENZA, a/k/a "Michael Grimaldi," PAUL GERACI, TED ROMEO, a/k/a "Ted Lamar," PAUL VANDIVIER, a/k/a "Doug Wright," and CINDY VANDIVIER a/k/a "Madison**

**Brookes," a/k/a "Madison Brookes,"** have an interest.

2.       Upon conviction of a violation, or a conspiracy to commit a violation, of Title 18, United States Code, Sections 1341 or 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.       Upon conviction of a violation of Title 18, United States Code, Sections 1956 or 1957, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c) and Title 18 United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

ELIZABETH YOUNG
SPECIAL ASSISTANT UNITED STATES ATTORNEY

26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO._____

v.

**CERTIFICATE OF TRIAL ATTORNEY\***

Gerald Parker, et al.,

**Superseding Case Information:**

_____Defendants._____/

| Court Division: (Select One) | | | | |
|---|---|---|---|---|
| | Miami | | Key West | |
| ✓ | FTL | | WPB | FTP |

| | | |
|---|---|---|
| New defendant(s) | Yes ____ | No ____ |
| Number of new defendants | ____ | |
| Total number of counts | ____ | |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     No____
List language and/or dialect     _____

4. This case will take   10   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| | (Check only one) | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | ✓ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | ✓ |
| V | 61 days and over | _____ | | |

6. Has this case previously been filed in this District Court?     (Yes or No)     No____
If yes: Judge _____     Case No._____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?     (Yes or No)     No____
If yes: Magistrate Case No. _____
Related miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the District of _____

Is this a potential death penalty case? (Yes or No)     No____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes_____     No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes_____     No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     Yes_____     No ✓

10. Does this case originate from a matter pending in the Southern Region of the U.S. Attorney's Office prior to November 23, 2020 (Judge Aileen M. Cannon)?     Yes ✓     No ____

_____
Elizabeth Young
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. A5501858

*Penalty Sheet(s) attached

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## <u>PENALTY SHEET</u>

**Defendant's Name:**  GERALD PARKER

**Case No:**

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 2-3

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 5-9

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 11

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  GERALD PARKER

**Case No:**

Count #: 12-15

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(A)(i)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 16-19

Monetary Transactions Using Proceeds of a Crime

Title 18, United States Code, Section 1957(a)

**\*Max. Penalty:** Ten (10) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:**  MICHAEL ASSENZA a/k/a "Michael Grimaldi"

**Case No:**

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  PAUL GERACI

**Case No:**

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 5-8

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 12

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 13-14

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(A)(i)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  PAUL GERACI

**Case No:**

Count #: 16, 18

Monetary Transactions Using Proceeds of a Crime

Title 18, United States Code, Section 1957(a)

**\*Max. Penalty:** Ten (10) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** TED ROMEO a/k/a "Ted Lamar"

**Case No:**

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 5-6

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 11

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  PAUL VANDIVIER a/k/a "Doug Wright"

**Case No:**

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 2-3

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 4, 10

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 11

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  PAUL VANDIVIER a/k/a "Doug Wright"

**Case No:**  _____

Count #: 12, 15

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(A)(i)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 17, 19

Monetary Transactions Using Proceeds of a Crime

Title 18, United States Code, Section 1957(a)

**\*Max. Penalty:** Ten (10) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** CINDY VANDIVIER a/k/a "Madison Brooke," a/k/a "Madison Brookes"

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 2-3

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Counts #: 4, 11

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 11

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  CINDY VANDIVIER a/k/a "Madison Brooke," a/k/a "Madison Brookes"

**Case No:**

Count #: 12, 15

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(A)(i)

**\*Max. Penalty:** Twenty (20) Years' Imprisonment

Count #: 17, 19

Monetary Transactions Using Proceeds of a Crime

Title 18, United States Code, Section 1957(a)

**\*Max. Penalty:** Ten (10) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**